UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASSANDRA L. DRISKILL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | NO.  C13-1928-RAJ-JPD<br><br><br>REPORT AND RECOMMENDATION |

　　　　Plaintiff Cassandra L. Driskill appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

I.　　　FACTS AND PROCEDURAL HISTORY

　　　　Plaintiff is a 30-year-old woman with a GED and training as a certified nursing assistant. Administrative Record ("AR") at 222. Her past work experience includes employment as a waitress, telemarketer, salesperson at a fair, preschool teacher, dietary aide,

REPORT AND RECOMMENDATION - 1

and deli cleaner. *Id*. Plaintiff was last gainfully employed in December 2008. AR at 18 (citing AR at 206-09).

On September 14, 2010, Plaintiff protectively filed a claim for SSI payments and an application for DIB, alleging an onset date of March 1, 2008. AR at 193-95, 198-99. Plaintiff asserts that she is disabled due to pseudotumor cerebri, bleeding on the brain, asthma, and fibromyalgia. AR at 221, 265.

The Commissioner denied Plaintiff's applications initially and on reconsideration. AR at 121-28, 134-47. Plaintiff requested a hearing, which was held on February 9, 2012. AR at 34-66. On March 19, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform her past relevant work ("PRW"). AR at 16-28. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On October 28, 2013, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists under 42 U.S.C. §§ 405(g), 1383(c)(3).

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Driskill bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity" ("SGA").  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's PRW to determine

---

[1] SGA is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her PRW, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On March 19, 2012, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant engaged in SGA from March 2008 to March 2009. The remaining findings address the period(s) during which claimant did not engage in SGA.

4. As of April 1, 2010, the claimant's fibromyalgia, headaches, and spinal cord disorder/pseudotumor cerebri are severe.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6. The claimant has the RFC to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).

7. The claimant is capable of performing PRW as a waitress, cashier, childcare worker, or telemarketer.

8. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2008, through the date of this decision.

AR at 18-27.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

REPORT AND RECOMMENDATION - 5

1. Did the ALJ err in assessing the opinions of examining psychologist Aaron Russell, Psy.D.?

2. Did the ALJ err in assessing the March 2011 opinions of treating pain specialist Thomas Tocher, M.D.?

3. Did the ALJ err at step four in finding that Plaintiff could perform PRW as a waitress?

Dkt. 15 at 1-2.

## VII.   DISCUSSION

A. <u>The ALJ Erred in One Respect as to Dr. Russell's Opinion, but Did Nor Err as to Dr. Tocher's Opinion.</u>

Plaintiff challenges the ALJ's assessment of the opinions of Drs. Russell and Tocher. According to Plaintiff, the ALJ erred in failing to account for all of the functional limitations identified by Dr. Russell, and in failing to address his pain disorder and anxiety disorder NOS diagnoses. Plaintiff also alleges that the ALJ erred in failing to discuss Dr. Tocher's March 2011 opinion (Tr. 1311-12) and in failing to evaluate his chronic pain disorder diagnosis. The Court will address each disputed opinion in turn.

1. *Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725

(9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

    2.    *Dr. Russell's Opinion*

Plaintiff's assignment of error addresses two aspects of Dr. Russell's opinion: his diagnoses, and his opinion regarding functional limitations.

        a.    Pain Disorder and Anxiety NOS Diagnoses

Plaintiff contends that the ALJ erred at step two in failing to include pain disorder or anxiety disorder as severe impairments, despite Dr. Russell's diagnoses of these disorders. Plaintiff does not address the reasons the ALJ provided for finding her anxiety disorder to be nonsevere, and thus has not shown that the ALJ's analysis was erroneous. *See* AR at 19-20.

The ALJ did not mention Dr. Russell's pain disorder diagnosis, but such an error can be cured by an ALJ's addressing the functional limitations in an RFC assessment that flow from diagnoses that were overlooked at step two. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.

REPORT AND RECOMMENDATION - 7

2007) (failure to list impairment as severe at step two harmless where limitations considered at step four). In this case, the ALJ discussed Plaintiff's numerous pain complaints and explained why he found her subjective reporting of pain to lack credibility. AR at 22-26. Plaintiff has not challenged the ALJ's adverse credibility determination, nor identified any limitation caused by her pain disorder that the ALJ should have included in the RFC assessment. Therefore, the step-two error alleged by Plaintiff is at most harmless.

          b.      Functional Limitations

Plaintiff contends that the ALJ misconstrued Dr. Russell's opinions regarding her mental functional limitations. Dr. Russell's opinion provides, in relevant part:

> Claimant's ability to understand, remember, and carry out very short and simple instructions is likely. Claimant's ability to understand and remember detailed instructions is fair to likely. Claimant's ability to maintain attention and concentration is likely to fair. Claimant's ability to complete a normal workday and workweek without interruptions at a consistent pace is fair from a psychiatric standpoint; however, claimant's physical/medical conditions may more likely impact workday functioning. Claimant's ability to deal with the various changes in the work setting is limited to fair. The likelihood of the claimant emotionally deteriorating in a work environment is moderate[ly] likely. Claimant should be able to work with supervisors, co-workers, and the public, as she was cooperative and pleasant during the interview.

AR at 1318-19. The ALJ assigned significant weight to this opinion, which he summarized as follows:

> Dr. Russell opined that the claimant could work with supervisors, co-workers, and the public, that she was able to understand and perform simple and complex instructions, that she was able to maintain attention and concentration, and that she was able to complete a normal workday and workweek without interruption at a consistent pace.

AR at 26 (citation omitted). Plaintiff argues that this summary fails to address the aspects of Dr. Russell's opinion that suggest at least some impact on her functioning as a result of mental limitations, and that the ALJ's RFC assessment is therefore erroneous.

REPORT AND RECOMMENDATION - 8

Most of Dr. Russell's opinions about Plaintiff's functional abilities are consistent with the ALJ's RFC assessment. Dr. Russell did not define "fair" to mean any particular degree of limitation, and it was reasonable for the ALJ to construe a "fair" ability to mean that Plaintiff's ability in a certain area lacked significant limitation. But Dr. Russell's prediction that Plaintiff would be moderately likely to emotionally deteriorate in a work environment is inconsistent with the ALJ's RFC assessment and the ALJ's failure to account for that portion of Dr. Russell's opinion is entirely unexplained. The Commissioner does not address this specific opinion in her briefing. Dkt. 16 at 5-7. On remand, the ALJ shall either credit Dr. Russell's opinion regarding Plaintiff's emotional deterioration in the workplace, or provide specific, legitimate reasons to discount it.

3.   *Dr. Tocher's Opinion*

The ALJ discussed Dr. Tocher's 2010-11 treatment notes when assessing Plaintiff's credibility (AR at 24), but did not address Dr. Tocher's March 2011 opinion regarding Plaintiff's physical functioning. AR at 1311-12. Dr. Tocher did not perform a physical evaluation before rendering this opinion (AR at 1312) and there is no evidence in his treatment notes that he ever performed testing to support his opinions regarding Plaintiff's physical functioning. AR at 1327-35. Thus, his opinion regarding Plaintiff's physical functioning is unaccompanied by clinical findings and is therefore not significant and probative evidence that the ALJ was required to discuss. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ "not required to discuss evidence that is neither significant nor probative").

Furthermore, although Dr. Tocher's treatment notes mention a chronic pain syndrome diagnosis (AR at 1327, 1331, 1333, 1335), the ALJ explained why he discredited Plaintiff's subjective pain complaints, and part of that analysis was based on Dr. Tocher's notes

REPORT AND RECOMMENDATION - 9

indicating that Plaintiff had violated her pain contract and had an extensive history of drug-seeking behavior. AR at 23-24. Again, Plaintiff has not challenged the ALJ's adverse credibility determination, which is tied to his assessment of Plaintiff's chronic pain, and has not identified any limitations flowing from the chronic pain syndrome diagnosis that should have been included in the RFC assessment. Thus, Plaintiff has not established prejudicial error in the ALJ's analysis of Dr. Tocher's treatment records.

B. <u>The ALJ's Step-Four Errors are Harmless, in Light of the Finding that Plaintiff can Perform the Waitress Job as Generally Performed.</u>

At the administrative hearing, the ALJ asked the vocational expert ("VE") to identify Plaintiff's PRW according to Dictionary of Occupational Titles ("DOT") job descriptions. AR at 64-65. The ALJ did not ask the VE to consider whether a hypothetical claimant with Plaintiff's limitations could perform the PRW as actually or generally performed, but found himself at step four that Plaintiff could perform her PRW as a waitress, cashier, childcare worker, and telemarketer as actually and generally performed. AR at 27. Plaintiff disputes whether the ALJ's step-four findings are supported by substantial evidence.

1. *Legal Standards*

At step four, the plaintiff has the burden of showing that he or she is no longer able to perform PRW. *Lewis v. Barnhart,* 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)). The step-four determination involves a comparison between the demands of the claimant's former work and his or her present capacity. *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). A claimant cannot merely show that he or she cannot perform the particular job he once performed; the claimant must prove that he or she cannot return to the same *type* of work. *Id*.

1    A person is not disabled if they are able to perform his or her past work. 20 C.F.R. §
2  404.1502(f). Social Security Ruling ("SSR") 82-61 describes the tests for determining whether
3  a claimant retains the capacity to perform his or her PRW. See SSR 82-61, 1982 WL 31387, at
4  *1-2 (Jan. 1, 1982). One test provides that "where the evidence shows that a claimant retains
5  the RFC to perform the functional demands and job duties of a particular past relevant job as
6  he or she actually performed it, the claimant should be found to be 'not disabled.'" *Id*.
7  Another test is "[w]hether the claimant retains the capacity to perform the functional demands
8  and job duties of the job as ordinarily required by employers throughout the national
9  economy." SSR 82-61, 1982 WL 31387, at *2. If this test is testified, then the claimant is
10 should be found not disabled. *Id*.

11    The DOT is the "best source for how a job is generally performed." *Pinto*, 249 F.3d at
12 845. In classifying prior work, the Commissioner must keep in mind that every occupation
13 involves various tasks that may require differing levels of physical exertion. It is error for the
14 ALJ to classify an occupation "according to the least demanding function." *Valenica v.*
15 *Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985). DOT descriptions "can be relied upon—for jobs
16 that are listed in the DOT—to define the job as it is *usually* performed in the national
17 economy." SSR 82-61, 1982 WL 31387, at *2 (emphasis in original). Thus, "if the claimant
18 cannot perform the excessive functional demands and/or job duties actually required in the
19 former job but can perform the functional demands and job duties as generally required by
20 employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id*.

21    A claimant's properly completed vocational report may be sufficient to furnish
22 information about his or her past work. *Id*. However, when significant variation exists
23 between a claimant's description of past work and the DOT description of the job, the claimant
24 may have performed a composite job. *Id.* A composite job has "significant elements of two or

REPORT AND RECOMMENDATION - 11

more occupations, and as such, ha[s] no counterpart in the DOT." *Id.* Composite jobs are evaluated "according to the particular facts of each individual case." *Id.*

2.  *The Parties Agree that Some of the ALJ's Step-Four Findings are Erroneous.*

The Commissioner does not defend the ALJ's findings that Plaintiff could perform her PRW as a cashier, childcare worker, and telemarketer. Dkt. 16 at 11 n.1. Thus, the Court will focus on whether the ALJ erred in finding that Plaintiff could perform her PRW as a waitress, as actually and generally performed.

3.  *The ALJ Erred in Finding that Plaintiff Could Perform the Waitress Job as Actually Performed.*

Plaintiff argues that the ALJ erred in finding that she could perform the waitress job as actually performed, because she described the job to require more standing and/or walking than the ALJ found her capable of performing. *Compare* AR at 254 (work history report describing 4-5 hours of standing, 4-5 hours of walking per day) *with* AR at 21 (ALJ's finding that Plaintiff can perform "light work," which requires approximately six hours of standing or walking in an eight-hour workday, according to SSR 83-10, 1983 WL 31251 at *5 (Jan. 1, 1983)). Plaintiff's interpretation of her work history report is contradicted by her own handwritten explanation: she indicated that the time estimates were based on an average Saturday, when she worked for five hours total. AR at 254. Thus, when Plaintiff indicated that she stood for "4-5 hours" and walked for "4-5 hours," these numbers were not intended to be accumulated, but instead represent four or five hours of standing *or* walking. This total does not necessarily exceed the definition of "light" work. SSR 83-10, 1983 WL 31251 at *5.

Plaintiff described her past waitress work as requiring her to lift 50 pounds, however, which is inconsistent with the definition of "light" work. *See* SSR 83-10, 1983 WL 31251 at *5 (indicating that "light" work involves "lifting no more than 20 pounds at a time"). The

REPORT AND RECOMMENDATION - 12

Commissioner does not discuss this aspect of Plaintiff's past work as actually performed. Because Plaintiff has identified a discrepancy between her description of her past waitress work and the ALJ's RFC assessment, the Court agrees with Plaintiff that ALJ erred in finding that she could perform the waitress job as actually performed.

    4.    *The ALJ Did Not Err in Finding that Plaintiff Could Perform the Waitress Job as Generally Performed*

Plaintiff argues that she did not actually work as waitress, as that job is defined by the DOT, because her past work involved the DOT-defined waitress duties *as well as* additional duties such as stocking and deep cleaning, and thus her job was a composite job without DOT counterpart. Dkt. 15 at 13. The Commissioner implicitly argues that Plaintiff's cleaning and stocking duties did not represent a significant portion of her job duties. Dkt. 16 at 12. The Commissioner's briefing does not specifically address whether Plaintiff's waitress job should be considered a composite job, or provide any guidance as to how the Court should assess the various aspects of Plaintiff's waitress job. *Id*.

Nonetheless, the Court finds that Plaintiff has not met her burden to show that her waitress job included "significant elements of two or more occupations" and was therefore a composite job. SSR 82-61, 1982 WL 31387, at *2. Her job as actually performed did include stocking and cleaning, duties that are not mentioned in the DOT description of the waitress job, but there is no evidence that these duties constituted a significant portion of her work rendering the DOT's definition inapplicable. *See* DOT 311.477-030, 1991 WL 672688. Plaintiff's counsel had an opportunity to ask the VE to address the purported inconsistency between her description and the DOT, but counsel did not do so. AR at 65-66. Because Plaintiff has not established that her waitress job was a composite job, she has not established that she cannot perform the type of waitress work that she performed in the past as it is generally performed.

*See Villa*, 797 F.2d at 798; *see also Kiai v. Colvin*, 2013 WL 5638983, at *7-10 (C.D. Cal. Oct. 16, 2013) (discussing *Villa* to find that a plaintiff had not met his burden to prove "an inability to return to his former *type* of work and not just to his former job" (emphasis in original)).

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **July 8, 2014**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 11, 2014**.

DATED this 24th day of June, 2014.

JAMES P. DONOHUE
United States Magistrate Judge